IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-01390-CNS

ANTHONY JONATHAN HERNANDEZ MONTES,

      Petitioner,

v.

DAWN CEJA, Warden, Aurora ICE Processing Center;
TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement;
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and
PAMELA BONDI, Attorney General of the United States,

      Respondents.

---

**ORDER**

---

Before the Court is Petitioner's Petition for Habeas Corpus, ECF No. 1, and Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 2. Respondent filed a response, ECF No. 9, and a sur-response, ECF No. 13. Petitioner also filed a reply. ECF No. 11. The Court has reviewed the parties' briefing, which demonstrates that Petitioner's challenge to Respondents' authority under § 1225(b)(2) is fundamentally legal in nature. Thus, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243, and, for the reasons outlined below, the Court DENIES the petition. In doing so, the Court presumes familiarity with the parties' briefing. *See* ECF Nos. 1, 2, 9, 11, 13.

1

## I.    LEGAL STANDARD

District courts may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## II.    DISCUSSION

Petitioner, a Nicaraguan citizen who has been in the custody of Immigration and Customs Enforcement (ICE) since October 2025, ECF No. 1 ¶¶ 1, 8, argues that his detention related to effectuation of his removal is improper. Specifically, Petitioner contends that even though an immigration judge (IJ) previously granted Petitioner's application for Withholding of Removal and placed him on an Order of Supervision (OSUP), Petitioner was nevertheless detained by ICE less than a week later and was not given any explanation or due process attendant to the revocation of his OSUP. *Id.* ¶¶ 6–9, 13. Petitioner argues that he is being held in violation of 8 U.S.C. § 1231(a)(6), which permits the government to detain non-citizens with a final order of removal for only 90 days, with limited exceptions. *Id.* at ¶ 34; *see also* ECF No. 2 at 7 (arguing that because "any assertions that Mr. Hernandez will be removed to a third country is speculative, not reasonably foreseeable, [] Mr. Hernandez's continued detention violates the Due Process Clause and the statutory limitations in [*Zadvydas v. Davis*, 533 U.S. 678 (2001)]"). In response, Respondents contend that contrary to Petitioner's assertion, his removal is in fact reasonably foreseeable and thus his detention does not violate 8 U.S.C. § 1231(a)(6) or the Supreme Court's ruling in *Zadvydas*. ECF No. 9 at 9. Respondents are correct.

Federal statutes outline the period of time in which an inadmissible noncitizen subject to a final order of removal may be held in post-removal period detention. 8 U.S.C. § 1231(a)(1)(A) provides that subject to certain exceptions, "when [a noncitizen] is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." That removal period "may" be extended if, for example, the noncitizen "acts to prevent [his] removal subject to an order of removal," 8 U.S.C. § 1231(a)(1)(C), or if it is determined that the noncitizen is "unlikely to comply with the order of removal," § 1231(a)(6). Considering § 1231(a)(6), the Supreme Court held in *Zadvydas* that the government's detention authority to continue detaining a noncitizen under § 1231(a)(6) is not indefinite, however, and limited that additional detention period extends only to a 6-month period. *Zadvydas*, 533 U.S. at 701. Then, "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Supreme Court clarified, however, that "[t]his 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Although Petitioner contends that there is no significant likelihood of his removal in the reasonably foreseeable future in light of the IJ's granting him withholding of removal, Respondents have provided sufficient evidence to demonstrate that is not the case. Specifically, Respondents have established that Petitioner's withholding of removal to

Nicaragua notwithstanding, Petitioner's removal to a third country, Mexico, is and would be reasonably foreseeable but for Petitioner's failure to cooperate with Respondents' removal efforts. ECF No. 9 at 9. Respondents argue that "ICE attempted to remove Petitioner to Mexico in November 2025 and February 2026 but was unable to effectuate removal because Petitioner claimed fear of removal to Mexico just before removal and refused to comply. ICE is currently able to remove Petitioner to Mexico if Petitioner complies with removal efforts." ECF No. 9 at 9 (citing ECF No. 9-1 (Wallace Decl.) ¶¶ 22-27, 29-31, 33). Specifically, Petitioner refused to sign the Notice of Removal to Mexico, resulting in ICE serving Petitioner with a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g). *Id.* at 5 (citing ECF No. 9-1 ¶¶ 29, 31).[1] Indeed, Petitioner himself admits that he was "served with a document indicating Respondents' intent to remove Petitioner to Mexico" on October 7, 2025, ECF No. 1 ¶ 9, but states that he has "refus[ed] to sign" the Notice of Removal to Mexico due to a lack of "evidence that the government has contacted the Mexican government and requested Mexico accept the Petitioner," ECF No. 11 at 4. Petitioner also contends that Respondents fail to identify any authority that requires him to sign the Notice of Removal to Mexico or that his failure to do so justifies his continued detention. *Id.* at 3–4.

Petitioner's refusal to sign such document is fatal to his request for habeas relief. As the Court has previously explained, the "Tenth Circuit has concluded in a case where a petitioner 'refused to accept or acknowledge' required forms 'to assist in [removal]' and

---

[1] In support of its contention, Respondents attach a declaration from Brenda Wallace, the ICE officer assigned to Petitioner's case, which supports Respondents' representations. *See* ECF No. 9-1.

'refused to complete an application for a Nigerian passport' . . . that petitioner's detention 'did not raise the specter of indefinite detention.'" *Alhadje v. Guadian*, No. 1:25–cv–04153–CNS, 2026 WL 783726, at *1 (D. Colo. Mar. 20, 2026) (quoting *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008)). *See also Singh v. Barr*, No. 17–cv–03057–DDD, 2019 WL 2452822, at *4 (D. Colo. June 12, 2019) ("And, as in *Abiodun* but unlike *Zadvydas*, there is no showing that India would not receive [the petitioner], and his continued detention is of his own doing." (citation modified)). Fundamentally, Petitioner's acknowledged refusal to sign the Notice of Removal "does not raise the specter of indefinite detention that might otherwise give rise to a valid habeas claim." *Alhadje*, 2026 WL 783726, at *1 (D. Colo. Mar. 20, 2026). *See also Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("The risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention."); *Lema v. I.N.S.*, 341 F.3d 853, 857 n.7 (9th Cir. 2003) ("[R]emovable aliens should not be rewarded with release into the United States for their bad behavior in refusing to assist officials to effect their removal." (citation modified)).[2]

"To be sure, [Respondents'] protracted efforts to complete removal is no cause for praise." *Alhadje*, 2026 WL 783726, at *1 (citation modified). But based on the record

---

[2] Regarding Petitioner's arguments—that, for instance, Respondents have failed to put forth evidence that any travel arrangements regarding his removal have been "contemplated or obtained"—these do not persuade, given Petitioner's acknowledged failure to sign the Notice of Removal. ECF No. 11 at 4. The same is true as to Petitioner's contention that Respondents did not follow proper revocation procedures. *See, e.g.,* ECF No. 1 at 9. At bottom, the failure to sign the Notice of Removal dooms Petitioner's habeas claim. *See, e.g., Lema*, 341 F.3d at 857 n.7; *Singh v. Sessions,* No. 17–cv–1324–WJM–KMT, 2017 WL 3397337, at *3 n.5 (D. Colo. Aug. 8, 2017); *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) ("[Petitioner]'s failure to cooperate with the efforts to remove him tolled the running of the removal period. Accordingly, [he] has failed to show that under the circumstances, his continued detention violates his constitutional rights." (citation modified)).

before the Court, the Court cannot conclude that granting Petitioner the habeas relief he seeks is proper. *See id.*[3]

### III.    CONCLUSION

Consistent with the above analysis, the Court DENIES Petitioner's Petition for Habeas Corpus. ECF No. 1. For the same reason that the Court denies Petitioner's habeas petition, the Court also DENIES Petitioner's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. ECF No. 2. The Clerk of Court is directed to close this case.

DATED this 26th day of May 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge

---

[3] Of course, should Petitioner ultimately sign this or any other document that attends his immigration proceedings but Respondents nonetheless fail to timely remove him, or attempt to remove him in contravention of any governing legal authority, he may file another habeas petition.